IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NUMBER 17-cr-00299-001 |
| v. | : | |
| LUIS VILLA DELEON | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Luis Villa Deleon is both an illegal alien and a recidivist. Despite having been deported from the United States, the defendant knowingly violated the laws of the United States by re-entering the country illegally, the punishment for which requires a sentence of incarceration. As the Presentence Investigation Report (PSR) plainly shows, prior period of incarceration had no bearing on the defendant's willingness to violate United States law. This fact is evidence by his prior arrest and convictions for drug trafficking. In light of the foregoing conduct, government counsel submits that a reasonable sentence, based on the facts of this case, is a sentence of 30 months imprisonment. This is so because the overriding goal of sentencing at issue here in both specific and general deterrence, which can best be accomplished by a deprivation of liberty.

The defendant is scheduled to appear for sentencing before the Court on December 4, 2017 at 2:00 p.m. The sentencing arises from Defendant Deleon's guilty plea, on September 6, 2017, from an indictment which charged him with one count of reentry after deportation in violation of 8 U.S.C. Section 1326(a) and (b)(2). The defendant has been in custody since December 13, 2016.

I.  **BACKGROUND FACTS.**

Defendant Deleon, who was born in the Dominican Republic, is an illegal alien within the United States. On September 20, 1995 -- and again on October 10, 1999 -- the defendant was deported from Puerto Rico. Later, in June 2000, immigration officials in Miami, Florida encountered the defendant. He was deported for a **third time** on July 26, 2000.[1]

On July 17, 2003, the defendant was arrested in South Hadley, Massachusetts. He was charged with eight counts of distributing cocaine and heroin. Following a trial, the defendant was convicted on April 20, 2004 and sentenced to a three-year term of imprisonment. On September 27, 2006, the defendant was deported for the **fourth time.**[2]

On August 8, 2015, the defendant was arrested, once again, in Springfield Massachusetts and charged with drug possession. However, he was released from custody before ICE officials could lodge a detainer against him.[3]

On December 13, 2016, the defendant was arrested in Reading, Pennsylvania, and charged with two counts of distributing heroin and one count of possessing heroin. He subsequently pled guilty on April 17, 2017. The defendant was sentenced to a term of six months to 23 months in prison followed by three years of probation.

On December 14, 2016, an ICE officer interviewed the defendant at the Berks County Prison. The purpose of the interview was to establish the defendant's alienage and deportability. During the interview, the defendant admitted that he was a citizen of the Dominican Republic. He also admitted that he had been deported in the "1990s" from Puerto Rico. The defendant further admitted that admitted that he illegally reentered the United States.

---

[1] See paragraph 4 of the PSR
[2] See paragraph 10 of the PSR.
[3] See paragraph 11 of the PSR.

To confirm the defendant's admission, ICE officials sought confirmation of this fact from the United States Department Officials who confirm the fact that the defendant did not apply for, or receive permission from, the Attorney General of the United States, his successor, or the Secretary of Homeland Security to re-enter the United States. On September 6, 2017, the defendant admitted allegations in the indictment during his guilty plea hearing.

## II.     OFFENSE LEVEL COMPUTATIONS

### Advisory Guidelines

The U.S Probation Department used the 2016 version of the Federal Advisory Guidelines to compute the defendant's advisory guideline range. That computation is set forth below.

- Base Offense Level……………………………………………………..8

- Specific Offense Characteristics (After the defendant was ordered Deported or removed from the United States for the first time, he Sustained a conviction for a felony offense for which the sentence Imposed was two years or more……………………………………+8

- Adjusted Offense Level (Subtotal)………………………………….16

- Acceptance of Responsibility (Section 3E1.1(a)……..…………….(2)

- Acceptance of Responsibility (Section 3E1.1(b)…………………..(1)

- Total Offense Level……………………………………………………13

- Criminal History Category

    - 9 points which places the defendant in Category IV.

- Advisory Guideline Range…………………….…..…24 to 30 months
- Special Assessment………………………………………$100 (mandatory)
- Fine Range…………………………………………….$5,500 to $55,000

## Statutory Maximum Sentence

The maximum statutory sentence that the Court can impose upon the defendant is a maximum of 20 years imprisonment and a maximum fine of $250,000 in addition to a special assessment of $100.

**III    DISCUSSION**

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006). At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). (2007) ("The sentencing judge should

set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority."); *United States v. Flores-Mejia*, -- F.3d --, 2014 WL 3450938, *2 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

## FIRST STATUTORY SENTENCING FACTOR

The first sentencing factor that the Court must consider is the nature and circumstances of the offense and the history and characteristics of the defendant. In this case, the evidence suggests that the defendant has no respect for the law. He was charged in this case with illegally re-entering the United States following deportation. Following his illegal re-entry, the defendant was convicted of drug offenses.

Contrary to the recommendations set forth in the defendant's sentencing memorandum, which seeks a term of incarceration of 1 year and a day, Government counsel respectfully submits that the defendant is not a person for whom significant leniency should be shown by the Court at sentencing. The defendant's sentencing memorandum portrays him as a person who has faced significant social and economic challenges because he was born in the Dominican Republic. His background, however, does not account for his drug trafficking activities in both Massachusetts and Reading Pennsylvania.

## THE SECOND STATUTORY SENTENCING FACTOR

The second sentencing factor encapsulates a series of sub-factors that the Court is required to consider when fashioning a sentence for the defendant. In this case, those sub-factors include the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

When considered in their totality, government counsel submits that a sentence at the top of the guideline range is an appropriate sentence. The PSR describes in detail the multiple crimes and criminal conduct of the defendant. This description plainly does not present a picture of a law-abiding citizen. In short, the defendant has demonstrated that he has no respect for the law. As such, a sentence at the top of the guideline is the only corrective measure available to the court to accomplish the goals of sentencing as described in the second sentencing factor.

## THE THIRD STATUTORY SENTENCING FACTOR

The third statutory sentencing factor that the court must consider when fashioning a sentence is the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.

In this case, a sentence that provide both specific and general deterrence against the commission of crimes of this nature in the future not only with respect to the defendant but also to other individuals who may be inclined to commit similar offenses. As such, a sentence at the top of the guideline range can best accomplish this objective.

## THE FOURTH STATUTORY SENTENCING FACTOR

The fourth statutory sentencing factor that the Court is required to consider is a sentence that provides the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner. Government counsel submits that a sentence at the of the guideline range (*in view of the amount of time that the defendant has already served while in custody*) will provide the Bureau of Prison with sufficient time to make an assessment of the foregoing assistance that the defendant needs. Upon his release from prison, he will likely be deported. However, to the extent that he learns useful vocational skills,

his ability to find employment in his home country might be more promising without having learned those skills.

## **THE FIFTH STATUTORY SENTENCING FACTOR**

The fifth statutory factor that the Court is required to consider consists of two elements are the guidelines and policy statements issued by the Sentencing Commission.

To the extent that any advisory guideline policy statements are relevant to the defendant's sentencing, the probation officer has discussed such issues in the PSR.

## **THE SIXTH STATUTORY SENTENCING FACTOR**

The sixth statutory sentencing factor that the Court must consider is the type of sentence that avoids unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Government counsel submits that a sentence at the top of the guideline range satisfies this sentencing factor requirement.

## THE SEVENTH STATUTORY SENTENCING FACTOR

The seventh sentencing factor speaks to the question of the need for restitution. In this case, restitution is not at issue give the nature of the defendant's crime.

## IV. CONCLUSION

For all of the reasons set forth in this memorandum, government counsel respectfully urges the Court to impose a sentence of 30 months of imprisonment which is the same sentence suggested by the probation department, couple with a special assessment of $100 and a period of supervised release.

                                                  Respectfully submitted

                                                  LOUIS D. LAPPEN
                                                  UNITED STATES ATTORNEY

                                                _____

                                                Floyd J. Miller
                                                Assistant United States Attorney

# **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the Government's Sentencing Memorandum was electronically filed with the Clerk of Court, United States District Court, Eastern District of Pennsylvania via ecf this 28 day of November 2017.

        Respectfully submitted

        _____
        Floyd J. Miller
        Assistant United States Attorney